## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ROTHMAN, on behalf of himself and all others similarly situated,<br><br><br>    Plaintiff,<br><br>vs.<br><br>CARDCONNECT CORP., JEFFREY SHANAHAN, PETER BURNS, TOOS DARUVALA, RICHARD GARMAN, RONALD TAYLOR, AND CHRISTOPHER WINSHIP,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(d), 14(e), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY DEMAND** |

Plaintiff Michael Rothman ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of himself and the public stockholders of CardConnect Corp. ("CardConnect" or the "Company") against the Company and CardConnect's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below)[1] for violations of Sections 14(d), 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§ 78n(d)(4), 78n(e) and 78t(a) respectively), and U.S. Securities and Exchange Commission (the "SEC") Rules 14d-9 (17 C.F.R. § 240.14d-9) and SEC Regulation G, 17 C.F.R.

---

[1] The Company and the Individual Defendants may also be referred to collectively as "Defendants."

244.100 in connection with the proposed merger transaction ("Proposed Transaction") between CardConnect and First Data Corporation ("First Data").

2.      On May 29, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement") with First Data, by which First Data will acquire all of the outstanding shares of CardConnect common stock through an all-cash tender offer at a purchase price of $15.00 per share (the "Tender Offer").

3.      Pursuant to the terms of the Merger Agreement, First Data commenced the Tender Offer on June 8, 2017, and the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC, recommending that the Company's stockholders tender their shares for the Tender Offer price.  The Tender Offer is set to expire on July 5, 2017.

4.      Plaintiff alleges that the Recommendation Statement is materially false and/or misleading because, *inter alia*, it fails to disclose certain material internal financial information about the Company, relied on the Individual Defendants to recommend the Proposed Transaction and the Company's financial advisor to render an opinion that the Proposed Transaction is fair to CardConnect stockholders, which omissions renders the Recommendation Statement false and/or misleading.

5.      The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e), and 20(a) of the Exchange Act, among other reasons because stockholders are entitled to such information in order to make a fully-informed decision regarding tendering their shares in connection with the Tender Offer about whether to tender their shares.

6.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction

or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under §§ 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) CardConnect maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of shares of CardConnect common stock.

3

11.    Defendant CardConnect is a Delaware Corporation with its principal place of business at 1000 Continental Drive, Suite 300 King of Prussia, PA 19406.

12.    Defendant Jeffrey Shanahan ("Shanahan") has served as the Chief Executive Officer, President and director of the Company since July 2016.

13.    Defendant Peter Burns ("Burns") has served as a director of the Company since July 2016.

14.    Defendant Toos Daruvala ("Daruvala") has served as a director of the Company since July 2016.

15.    Defendant Richard Garman ("Garman") has served as a director of the Company since July 2016.

16.    Defendant Ronald Taylor ("Taylor") has served as a director of the Company since July 2016.

17.    Defendant Christopher Winship ("Winship") has served as a director of the Company since July 2016.

18.    Defendants Shanahan, Burns, Daruvala, Garman, Taylor and Winship are collectively referred to as "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action individually and as a class action on behalf of all holders of CardConnect stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

20.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

4

21.     The Class is so numerous that joinder of all members is impracticable.  According to the Recommendation Statement, as of May 25, 2017, there were 31,472,060 shares issued and outstanding.  These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

22.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

a.      whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction and SEC regulations promulgated thereunder; and

b.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

23.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

24.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

26.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

27.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

28.    Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## SUBSTANTIVE ALLEGATIONS

**I.      Background and the Proposed Transaction**

29.    CardConnect is a holding company and a provider of payment processing solutions to merchants throughout the United States.  The Company's operates through two segments (i) Merchant Acquiring Services, and (ii) Other.  The Company's platform allows it to provide payment solutions, customer support and tools for its distribution partners and merchants.  The Company's solutions and services enable distribution partners to manage their business and for merchants to securely accept electronic payments.

30.    The Merchant Acquiring segment business involves the provision of end-to-end electronic payment processing services to merchants by facilitating the exchange of information and funds between them and cardholders' financial institutions.  The Company undertakes or facilitates merchant set-up and training, transaction authorization, settlement, merchant funding, merchant assistance, support, and risk management through third parties.  The Company's platform provides merchants with account management, a single source for payment processing data and reporting, transaction management, alerts, e-statements, and a marketplace for add-on functionality.

31.    The Company also provides services to Enterprise customers that primarily utilize Enterprise Resource Planning ("ERP") systems to manage their businesses.  These services are

primarily ERP integration services utilizing its secure hosted payment gateway, and also include secure, point-to-point encryption ("P2PE") payment terminals and acceptance devices. Its solution supports a range of payment card streams and addresses ERP payment needs in several payment function areas, including authorizations, reversals and/or split deliveries, settlement, automated reconciliation and security.[2]

32.    On May 29, 2017, CardConnect and First Data issued a joint press release announcing the Proposed Transaction which stated the following, in relevant part:

> NEW YORK AND KING OF PRUSSIA, PA, MAY 29, 2017 – First Data Corporation (NYSE: FDC), a global leader in commerce-enabling technology and solutions, and CardConnect Corp. (NASDAQ: CCN), a technology-oriented commerce solutions provider, announced today that they have entered into a definitive merger agreement for First Data to acquire all of the outstanding shares of common stock of CardConnect for $15.00 per share in cash. The transaction is expected to be modestly accretive to First Data's adjusted EPS in the first full year post-closing, before expected synergies.
>
> CardConnect is an innovative provider of payment processing and technology solutions and is one of First Data's largest distribution partners. It processes approximately $26 billion of volume annually from about 67,000 merchant customers which are served by CardConnect's large base of distribution partners.
>
> "This transaction is consistent with our strategy of integrating and scaling innovative technologies across our distribution footprint to better serve our partners and customers," said First Data Chairman and CEO, Frank Bisignano. "CardConnect is a long-standing First Data distribution partner and we are excited to incorporate their state-of-the-art solutions across some of our most important strategic initiatives such as partner-centric distribution, integrated payments, and enterprise payments solutions."
>
> "We are thrilled with the opportunity for CardConnect to partner with an organization that has the world class capabilities of First Data," said CardConnect President and CEO, Jeff Shanahan. "This transaction improves our ability to innovate and deliver leading technology-oriented commerce solutions to our combined customer base. In addition, we believe our growth trajectory improves with First Data's breadth of products and its powerful distribution network."

---

[2] https://www.reuters.com/finance/stocks/companyProfile?symbol=CCN.OQ.

Under the terms of the definitive merger agreement between the parties, a subsidiary of First Data will commence a tender offer to acquire all of the outstanding CardConnect common stock for a purchase price of $15.00 per share in cash, followed by a merger in which each share of CardConnect common stock not tendered will be converted into the right to receive $15.00 per share in cash. The aggregate transaction value is approximately $750 million, including repayment of CardConnect's outstanding debt and the redemption of CardConnect's preferred stock. First Data intends to fund the transaction with a combination of cash on hand and funds available under existing credit facilities.

II.    **The Merger Consideration Appears Inadequate in Light of CardConnect's Recent Financial Performance and Growth Prospects**

33.    The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  Indeed, for the full-year 2016, the Company reported bankcard volume of $22.3 billion, a 30.8% increase from $17.1 billion in the prior year; revenue of $589.3 million, a 28.5% increase from $458.6 million in the prior year; net revenue of $156.5 million, a 29.7% increase from $120.6 million in the prior year; and adjusted EBITDA of $38.0 million, compared to $28.8 million in the prior year.

34.    The Company enjoyed continued growth in the first fiscal quarter of 2017. CardConnect reported bankcard volume of $6.0 billion, a 22.8% increase from $4.9 billion in the prior year period; revenue of $156.7 million, a 20.5% increase from $130.0 million in the prior year period; and net revenue of $41.1 million, a 19.3% increase from $34.4 million in the prior year period.

35.    In a press release dated May 10, 2017, Individual Defendant Shanahan stated that the Company was poised for future growth in view of its recent acquisition of MertzCo, Inc.:

Fiscal 2017 is off to a strong start.  Most importantly, organic bankcard volume grew a record 22.8% in the first quarter of 2017 compared to the prior year quarter. . . .Volume growth was again primarily driven by our unique value proposition in the integrated payments market where we offer software partners a unified payments platform delivered with best in class payment security.  As part of our 2017 strategy to invest for future growth, early in the second quarter, we acquired MertzCo, Inc., who was our largest value-added reseller.  We are thrilled to have

someone with Michael Mertz's track record of success leading our sales. Additionally, we are executing on our organic growth plan, both in sales and technology. We are also providing updated guidance for 2017 as a result of the MertzCo transaction.

36.     In sum, it appears that CardConnect is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not tender their shares.

## III.    The Recommendation Statement Omits Material Information

37.     On June 8, 2017, CardConnect filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by First Data the previous day. As alleged below and elsewhere herein, the Recommendation Statement contains material misrepresentations and omissions of fact that must be cured to allow CardConnect's stockholders to render an informed decision with respect to the Tender Offer. Specifically, the Recommendation Statement omits material information regarding certain of the Company's financial projections and generally accepted accounting principles ("GAAP") reconciliation of those projections.

38.     When a company discloses non-GAAP financial measures in a Recommendation Statement, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

39.    The SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique, company-specific non-GAAP financial measures (as CardConnect has included in the Recommendation Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.    Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[3]

40.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[4] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial

---

[3] Mary Jo White, Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[4] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

measures that demonstrate the SEC's tightening policy.[5]   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

41.    The Recommendation Statement discloses that "In order to better evaluate CardConnect's strategic alternatives relative to the risks of a stand-alone strategy, CardConnect's management has independently developed and provided to the CardConnect Board two cases of annual financial projections from 2017 through 2022.   The "Scenario 1 Case" reflects the assumptions underlying CardConnect's public earnings guidance.   The "Scenario 2 Case" reflects a potential downside scenario that included, among other factors, potential reduced ability to sign new merchants, decreased acceleration in certain distribution channels and a reduced rate of volume attrition improvement." Recommendation Statement at 20.

42.    The Recommendation Statement purports to reconcile certain GAAP financial measures with non-GAAP financial measures for each of Scenario 1 and 2, but omits certain critical information from this reconciliation.   In Scenarios 1 and 2, Defendants claimed to reconcile certain non-GAAP financial measures (Net Revenues, Adjusted EBITDA, Unlevered Free Cash Flow) with GAAP financial measures (GAAP Revenue and Net Income).   Recommendation Statement at 22-23.   In reconciling the GAAP measure Net Income with the non-GAAP measure Unlevered Free Cash Flows, Defendants included a projected line item for purported "Non-GAAP Pro Forma Adjustments" that was a projected pro forma provision for income taxes.   The projected pro forma provision for income taxes appears to reflect estimated projected tax liabilities that account for tax savings obtained through the use of the Company's projected net operating losses

_____

[5] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

("NOLs"). The Recommendation Statement notes that the pro forma adjustment reflects an effective tax rate of 37.2% and "follows the utilization of the company's NOL." The Recommendation Statement is misleading because it fails to disclose (i) the projected NOLs, (ii) whether the use of the term "pro forma" to describe this line item means that the projected NOLs includes NOLs from the MertzCo acquisition or some other acquisition and if so, the impact the acquisition had on the Company's NOLs, and (iii) the rationale for projecting NOLs on a pro forma basis in the projected GAAP reconciliation for projections that otherwise were calculated for the Company on a stand-alone basis, without taking into account the MertzCo and/or other acquisitions.

43.    This information is material and must be reported as the Company possesses a significant tax asset in its NOLs. As reported in the Company's most recent annual report, the Company had federal net operating loss carryforwards of $9,415,064, which will expire between 2034 and 2036. In addition, the Company had pretax state net operating loss carryforwards of $8,012,432, which will expire between 2023 and 2036. The Company also has federal research and development credits of $327,887 and a Pennsylvania research and development credit of $34,713 that will expire in 2036 and 2031, respectively. Importantly, the Company reported that "Certain tax attributes are subject to an annual limitation as a result of the Merger, which constitutes a change of ownership as defined under Internal Revenue Code Section 382. The Company has a full valuation allowance recorded against all net operating losses and credits associated with the jurisdictions in which it operates." (emphasis added).

44.    The Recommendation Statement is false and/or misleading in the reporting of the Company's projected reconciliation of non-GAAP and GAAP financial measures and projected utilization of NOLs on a *pro forma* basis because there are at least two other transactions that may

have impacted the determination and annual utilization of the Company's NOLs, *i.e.,* the July 29, 2016 merger of the Company with FTS Holding Corporation ("FTS"), reported in the Company's Form 10-K on March 16, 2017,[6] and the acquisition made by the Company that is mentioned in the Recommendation Statement that occurred on or around April 3, 2017 of MertzCo. Indeed, the impact of the MertzCo acquisition on valuation was discussed by the Board during the negotiations of the Proposed Transaction. *See* Recommendation Statement at 14.[7]

45.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to CardConnect's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the Recommendation Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if CardConnect's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

64.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

---

[6] www.sec.gov/Archives/edgar/data/1614818/000161481817000003/cardconnect201610-k.htm.
[7]    "On April 3, 2017, the CardConnect Board met telephonically, together with members of CardConnect's senior management, to discuss the non-binding indication of interest and related matters. The CardConnect Board and CardConnect's management reviewed and discussed the $14.00 in cash per Share price, strategic and financial information regarding CardConnect, including as impacted by the CardConnect's acquisition of MertzCo, strategic considerations relating to the First Data indication of interest, and CardConnect's other potential strategic alternatives, including the possibility of engaging with other potential partners regarding a transaction or to continue as a standalone independent entity. "

65.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

66.     As discussed above, CardConnect filed and delivered the Recommendation Statement to its stockholders, which Defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

67.     Defendants are violating § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     The Recommendation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

69.     In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

70.    The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

71.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

72.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

73.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

75.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

76.    The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

77.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

78.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

79.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

### COUNT III
**Against the Individual Defendants for
Violations of § 20(a) of the 1934 Act**

80.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81.    The Individual Defendants acted as controlling persons of CardConnect within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of CardConnect and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in

the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

82.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

83.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.    They were thus directly involved in the making of the Recommendation Statement.

84.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

85.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy;

C.    Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.    In the event Defendants consummate the Proposed Transaction, awarding damages to Plaintiff and the Class;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 20, 2017

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr. (*Pro Hac forthcoming*)
Nadeem Faruqi
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

**FARUQI & FARUQI, LLP**

By: _Stuart J. Guber_
    Stuart J. Guber
    101 Greenwood Avenue, Suite 600
    Jenkintown, PA 19046
    Telephone: (215) 277-5770
    Facsimile: (215) 277-5771
    Email: sguber@faruqilaw.com

*Counsel for Plaintiff*

# EXHIBIT A

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Michael Rothman ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against CardConnect Corp. ("CCN") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in CCN securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 16th day of June 2017.

_____
Michael Rothman

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 07/19/16 | 100 |
|  |  |  |
|  |  |  |
|  |  |  |